**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MOHAMMAD ISLAM, Individually and on Behalf of All Others Similarly Situated,<br><br>                     Plaintiffs,<br><br>v.<br><br>LYFT, INC.,<br><br>                     Defendant. | Case No. 1:20-cv-03004<br><br>**District Judge Ronnie Abrams**<br><br>**DECLARATION OF NEIL SHAH IN SUPPORT OF LYFT'S MOTION TO COMPEL ARBITRATION** |

I, Neil Shah, declare as follows:

      1.     I am employed by Lyft, Inc. ("Lyft") as a Product Manager. In that role, I am familiar with Lyft's Platform and mobile phone application, including the user registration process and the processes by which Lyft updates its Terms of Service Agreement, communicates updates to its Terms of Service Agreement to users, and by which users (both drivers and riders) consent to the updated Terms of Service Agreement. I am also familiar with and have access to Lyft's records regarding users' account information, including information about when and how users of Lyft's Platform register for the Lyft Platform, use the Lyft Platform, and respond to updates to the Lyft Terms of Service Agreement.

      2.     The following facts are based on my personal knowledge and review of Lyft records. If called upon to testify as a witness, I could and would testify competently to the truth.

      *Lyft Platform and App*

      3.     Lyft is a mobile-based ridesharing marketplace platform (the "Lyft Platform") that enables people who seek rides to certain destinations ("riders") to be matched with people willing to drive to or through those destinations ("drivers") (collectively, "users"). Lyft does not itself provide rides or hire drivers to provide rides. The Lyft Platform includes, among

other things, Lyft's website, technology platform, and mobile phone application (called the "Lyft App").  Using the Lyft app, Lyft offers information and a method to connect drivers and riders with each other and permit communication between drivers and riders.

4. As a Product Manager for Lyft, I am familiar with the process by which users register for and interface with the Lyft Platform.  The process to create a registered profile and use the Lyft Platform requires an individual to download the Lyft App, consent to the Terms of Service Agreement, and supply information such as the individual's first and last name, email address, and phone number.  Both drivers and riders must complete this registration process before offering or requesting rides through the Lyft App.

5. Lyft's Terms of Service Agreement describes the terms and conditions on which Lyft offers access to Lyft's Platform. Users consent to Lyft's Terms of Service Agreement as part of the registration process. Drivers on Lyft's Platform also consent to a driver addendum containing additional terms.

6. Lyft periodically updates its Terms of Service Agreement.  Such updates are communicated to Lyft drivers, who are required to re-consent to the updated Terms in order to continue offering rides using the Lyft App.

*The August 26, 2019 Lyft Terms of Service Agreement*

7. On August 26, 2019, Lyft updated its Terms of Service Agreement. Subsequent to the update, registered Lyft users who opened the Lyft App were required to consent to the August 26, 2019 Terms of Service Agreement, which automatically appeared on a screen in the Lyft App.  The following screen is a depiction of the user interface that a registered Lyft user would have seen:



8.      Users presented with the August 26, 2019 Terms of Service Agreement had the opportunity to scroll all the way through the text of the August 26, 2019 Terms of Service Agreement without leaving the screen.  Attached as Exhibit 1 is a true and correct copy of the August 26, 2019 Terms of Service Agreement.

9.      Drivers presented with the August 26, 2019 Terms of Service Agreement were required to click "I Agree" in order to proceed to offer a ride using the Lyft App.  A registered driver, *i.e.*, a driver who had previously registered for the Lyft App, could not offer a ride through the Lyft app after being presented with the August 26, 2019 Terms of Service Agreement unless the driver clicked the "I Agree" button.  Once a registered driver was presented with the August 26, 2019 Terms of Service Agreement, until the driver clicked the "I Agree" button, the screen shown above continued to appear each time the driver opened the Lyft App.

*Electronic Storage of User Acceptance*

10. In the normal course of business, Lyft maintains user account information, including information about when and how its users (both riders and drivers) register for the Lyft Platform, use the Lyft Platform, and respond to updates to the Lyft Terms of Service Agreement. As a Product Manager, I have access to this registration, use, and update information, and I am familiar with this information and the manner in which it is recorded and maintained.

11. When a user clicked "I Agree" after being presented with the August 26, 2019 Terms of Service Agreement in the Lyft App, Lyft automatically recorded the timestamp of the user's acceptance of the Terms of Service Agreement.

12. Information relating to a user's registration process and a user's acceptance of an update to the Terms of Service Agreement is maintained in Lyft's business records.

*Mr. Islam's Use of the Lyft App and Platform*

13. According to Lyft's business records, plaintiff Mr. Islam first agreed to Lyft's Terms of Service on August 13, 2014. According to Lyft's records, Mr. Islam also accepted Lyft's Terms of Service Agreement many additional times, most recently on May 3, 2018; July 5, 2019; July 11, 2019; August 2, 2019; September 8, 2019; November 7, 2019; and November 25, 2019.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 30th day of July, 2020.

_____
Neil Shah